

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMIT PATEL, *a former shareholder of Devesh, Inc., a dissolved Illinois Corporation*, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 16-cv-10497 |
| CBRE, INC., | ) ) Honorable Charles R. Norgle Sr. |
| Defendant. | ) ) |

### MEMORANDUM OPINION AND ORDER

Amit Patel ("Plaintiff") filed a single claim for tortious interference with contract against Defendant CBRE, Inc. ("Defendant"), alleging that Defendant interfered with a commercial lease that Plaintiff signed with 55 East Monroe Investors IV, LLC ("55 East Monroe") in April 2010. See Dkt. 12, Am. Compl. Defendant moved for summary judgment, Dkt. 36, on Plaintiff's single claim. Plaintiff subsequently filed a cross-motion for summary judgment. Dkt. 47. For the reasons explained below, Defendant's motion is granted and Plaintiff's motion is denied.

### I. BACKGROUND

The Court takes the relevant facts from the parties' respective Local Rule 56.1 statements.[1] When parties seek summary judgment they must comply with L.R. 56.1, which requires the parties to include with their motion, "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." LR 56.1(a)(3). If the moving party fails to comply with the rule, the motion may be denied without further consideration. Id. If the responding party fails to comply, its additional facts may be

---

[1] The following undisputed facts were taken from Defendant's Local Rule 56.1 Statement of Material Facts ("Def.'s SOMF"); Plaintiff's Response of Defendant's LR 56.1 Statement of Material Facts ("Pl.'s Resp. to Def.'s SOMF") and Plaintiff's Statement of Additional Facts ("Pl.'s SOAF").

ignored, and the properly supported facts asserted in the moving party's submission are deemed admitted. LR 56.1(b)(3)(C). Litigants must strictly comply with LR 56.1, and district courts do not abuse their discretion when they disregard facts presented in a noncompliant manner. Cracco v. Vitran Exp., Inc., 559 F.3d 625, 632 (7th Cir.2009). "The court is not required to scour the record for evidence that supports a party's case if the party fails to point it out; that is the counsel's job." Dominguez v. Quigley's Irish Pub, Inc., 790 F. Supp. 2d 803, 805 (N.D. Ill. 2011) (citing F.T.C. v. Bay Area Business Council, Inc., 423 F.3d 627, 633 (7th Cir. 2005)); Curtis v. Costco Wholesale Corp., 807 F.3d 215, 219 (7th Cir. 2015) ("The purpose of Rule 56.1 is to have the litigants present to the district court a clear, concise list of material facts that are central to the summary judgment determination. It is the litigants' duty to clearly identify material facts in dispute and provide the admissible evidence that tends to prove or disprove the proffered fact. A litigant which denies a material fact is required to provide the admissible evidence that supports his denial in a clear, concise, and obvious fashion, for quick reference of the court."); Cracco, 559 F.3d at 632 (7th Cir. 2009) ("Because of the important function local rules like Rule 56.1 serve in organizing the evidence and identifying disputed facts, we have consistently upheld the district court's discretion to require strict compliance with those rules.").

Defendant CBRE, Inc. provides retail leasing and brokerage services for commercial property owners. In April 2009, Defendant signed a brokerage agreement with 55 East Monroe who owns the property involved in this dispute. The property is located at 55 East Monroe Street in Chicago, Illinois (the "Premises"). In April 2010, Plaintiff, who is the former shareholder of the dissolved Illinois corporation Devesh, Inc., signed a commercial property lease with 55 East Monroe, which was represented during the lease negotiations by Kim McGuire of Defendant CBRE.

Under the terms of the lease, Plaintiff was required to operate a Seattle's Best Coffee in the commercial property. The lease also designated Glenstar Asset Management, LLC as 55 East Monroe's agent in connection with the performance of the lease. Glenstar had authority to manage the property in a manner consistent with an annual budget approved by 55 East Monroe. Glenstar did not have the authority to make final decisions regarding leasing and subleasing the property.

In April 2011, Glenstar requested Defendant to start marketing the property to replacement tenants. In response, Plaintiff filed suit against 55 East Monroe in the Circuit Court of Cook County, Illinois, Case No. 13 L 7823. Plaintiff's state court complaint brought claims for breach of contract and unjust enrichment against 55 East Monroe. Plaintiff specifically alleged that 55 East Monroe breached the lease when it failed to notify Plaintiff of its intention to terminate the lease. Eventually the parties settled the case. On July 17, 2015, Plaintiff and 55 East Monroe entered into a settlement agreement to resolve the state court litigation (the "settlement agreement"). As part of the settlement agreement, Plaintiff was to receive $66,500 in consideration for releasing parties from claims related to the alleged breach of the lease. Paragraph four of the settlement agreement contained the release provision (the "release provision").

Despite settling the state court case and after signing the settlement agreement, Plaintiff sued Defendant in federal court on a single claim against Defendant for tortious interference with the same lease involved in the state court litigation. Def.'s SOMF ¶ 13, Ex. D; Pl. Resp. to Def.'s SOMF ¶ 13. The parties have litigated this case since 2016 and have both moved for summary judgment.

Cross-motions for summary judgment have been brought by the parties. However, despite submitting a LR 56.1(b)(3)(C) statement, Plaintiff has failed to comply with LR 56.1(a)(3), which requires him to submit along with his motion for summary judgment "a statement of material facts

3

as to which the moving party contends there is no genuine issue and that entitle[s] the moving party to a judgment as a matter of law." See Local Rule 56.1(a)(3). Plaintiff's motion is therefore denied. Cichon v. Exelon Generation Co., L.L.C., 401 F.3d 803, 809–10 (7th Cir.2005) (quoting Ammons v. Aramark Unif. Servs., Inc., 368 F.3d 809, 817 (7th Cir.2004)). Thus, the Court turns to Defendant's motion to examine if it has demonstrated that no genuine issue of material fact exists and if the law requires a ruling in Defendant's favor.

## II. DISCUSSION

### A. Standard of Review

"Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Northfield Ins. Co. v. City of Waukegan, 701 F.3d 1124, 1128 (7th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Wells v. Coker, 707 F.3d 756, 760 (7th Cir. 2013) (internal quotation marks and citation omitted). "On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). The court must view "the record in the light most favorable to the nonmovant and [avoid] the temptation to decide which party's version of the facts is more likely true." Id. The same standard applies to cross-motions for summary judgment. See, e.g., Int'l Bd. Of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc., 293 F.3d 402, 404 (7th Cir. 2002). "Each motion is to be evaluated independently, and denial of one does not necessitate the grant of the other." Dominguez v. Quigley's Irish Pub, Inc., 790 F. Supp. 2d 803, 810 (N.D. Ill. 2011).

4

Defendant asserts two arguments. First that the settlement agreement between Plaintiff and 55 East Monroe, resulting from the state court litigation, released Defendant from Plaintiff's claim in this case. Second, Defendant argues that because it was acting on behalf of and as 55 East Monroe's agent, it cannot under Illinois law be liable for tortiously interfering with the lease. As discussed below, both arguments have merit and present independent grounds for summary judgment in Defendant's favor. The Court, however, believes it is prudent to address the settlement agreement first.

**A. Settlement Agreement**

A release in a settlement agreement is an instrument in which a party abandons claims against another and is governed by contract law. Loberg v. Hallwood Realty Partners, L.P., 323 Ill. App. 3d 936, 941 (2001). Therefore, "the rights of the parties are limited to the terms expressed in the agreement and a release will not be construed to release claims not within the contemplation of the parties." Id. (internal citations omitted).

Defendant argues that Plaintiff released Defendant from all liability regarding the alleged tortious acts when Plaintiff signed the settlement agreement with 55 East Monroe. See Dtk. 38, Def.'s SOMF Ex. 5 ¶ 4. Plaintiff disputes that Defendant was released under the terms of the settlement agreement. Put simply, Plaintiff argues that Defendant was not released because the brokerage agreement between Defendant and 55 East Monroe was not in effect when Defendant was searching for a replacement tenant; Defendant worked as an independent contractor, and therefore, it was not acting as 55 East Monroe's agent during the relevant period; and Plaintiff did not intend to release Defendant. Pl. Memo. Supp. 9-15.

Neither party, however, disagrees that on July 17, 2015, Plaintiff and 55 East Monroe signed a settlement agreement related to the claims brought by Plaintiff in the lawsuit in the Circuit Court of Cook County, Illinois, 13 L 7823. Def.'s SOMF ¶ 15, Ex. E; Pl. Resp. to Def.'s SOMF ¶

5

15. Nor do the parties disagree that Plaintiff and 55 East Monroe entered into a settlement agreement in which Plaintiff received payment and covenanted to release claims pending and future claims related to the state court litigation. Id. ¶¶ 13-14. The release provision states:

> "The Parties hereby unconditionally release and forever discharge each other as well as their past, present and future directors, shareholders, officers, employees, attorneys, consultants, agents, administrators, distributors, representatives, customers, and insurers … and all persons acting by, through, under or in concert with them … from and against any and all claims, counterclaims, contentions, debts, liabilities, demands, promises, agreements, costs, expenses (including but not limited to attorneys' fees actually incurred), damages, losses, suits, liens, actions or causes of action, of whatever kind or nature, whether in law or equity, based on or arising out of the Settled Claims, that a Party had, now has, or hereafter may have against the other Party from the beginning of time to the date of this Agreement."

Def.'s SOMF ¶ 15, Ex. E at ¶ 4. However, although Plaintiff acknowledges he signed the settlement agreement, he contends that Defendant was not released under the terms of the agreement, and Plaintiff did not intend to release Defendant under the agreement. Pl. Mem. Supp. 13-14.

Plaintiff explains that the brokerage agreement between Defendant and 55 East Monroe was not in effect during April 2011 because, essentially, the parties had failed to amend the agreement to cover the relevant period in which Defendant marketed the premises. Pl. Mem. Supp. 12. Plaintiff concludes that there is no evidence to support Defendant's position that a brokerage agreement existed between Defendant and 55 East Monroe during the relevant time. See id.

55 East Monroe originally signed the brokerage agreement with Northern Realty Group, Ltd in February 2006, and later agreed to assign all rights and obligations to Defendant in March 2008. Def.'s SOMF ¶ 6, Ex. 2, p. 5, 7-9. The brokerage agreement expressly states that "Defendant agrees to make commercially reasonable efforts to lease the Retail space with due diligence, subject to the direction and control of 55 East Monroe. These efforts shall include, but shall not be

6

limited to…aiding 55 East Monroe, and its representatives in negotiating and securing leases…" Id. at p. 7.

Unlike Plaintiff, Defendant has cited to undisputed evidentiary support, which at a minimum, demonstrates that an ongoing relationship existed between Defendant and 55 East Monroe creating an implied contract. See Citizen's Bank-Illinois, N.A. v. American Nat. Bank and Trust Co. of Chicago, 326 Ill. App. 3d 822 (1st Dist. 2001); Schivarelli v. Chicago Transit Auth., 355 Ill. App. 3d 93, 101 (2005) ("[An implied contract] may be proved by circumstances showing that the parties intended to contract and by the general course of dealing between them.").

The brokerage agreement was amended several times. The September 14, 2011 amendment provides evidence of the parties' intent with respect to their business relationship. The parties both signed the amendment that states in relevant part: "and whereas [Defendant] has rendered services on an ongoing basis and wishes to continue to render services in connection with the Agreement." Def.'s SOMF Ex. B, p. 2. The amendment's terms and allegations contained within Plaintiff's amended complaint (see e.g. Am. Compl. ¶¶ 34-49) demonstrate that Defendant was carrying out 55 East Monroe's affairs during the relevant time. See Chemtool, Inc. v. Lubrication Techs., Inc., 148 F.3d 742, 745 (7th Cir. 1998). The amendment pointedly states that Defendant continued to provide services for 55 East Monroe after the Agreement's expiration date. And furthermore, Defendant and 55 East Monroe expressly agreed to continue the relationship consistent with the terms of the brokerage agreement. In other words, Defendant was acting as 55 East Monroe's broker—whether through an express or implied contract—during the relevant period.

That said, the terms of the release provision are broad and release more than just 55 East Monroe's agents. As Defendant points out, the settlement agreement releases, in addition to agents, (and others) consultants, administrators, and representatives. See Def.'s SOMF ¶ 15; Def. Reply

6. Because Defendant continued to provide brokerage services to 55 East Monroe during the time Plaintiff alleges Defendant tortiously interfered with the lease, the Court finds Defendant was acting in a representative capacity and within the scope of the categories identified in the settlement agreement release provision. Moreover, Plaintiff does not dispute Defendant continued to provide brokerage services to 55 East Monroe during that time. Pl. Resp. Def.'s SOMF ¶¶ 12, 14. Nor does Plaintiff submit evidence to the contrary—rather, his pleadings contain a detailed narrative of the steps Defendant took to solicit tenants for 55 East Monroe (see e.g. Am. Compl. ¶¶ 34-56), which the Court conclusively adopts. See Keller v. United States, 58 F.3d 1194, 1198 n. 8 (7th Cir.1995).

    Because the settlement agreement release provision is expansive, Plaintiff's argument that Defendant was not released because it was working as an independent contractor fails. Even adopting Plaintiff's argument for a moment and assuming as true that Defendant was an independent contractor, the evidence in the record demonstrates that Defendant worked in some capacity for 55 East Monroe's benefit. Under the express terms of the release provision, "representatives" of both parties were released from liability. These facts are not in dispute. Determining whether Defendant was acting as an agent or an independent contractor for 55 East Monroe is of no value because it is clear from the record and the pleadings that Defendant worked in a representative capacity for 55 East Monroe during the time involving the events which precipitated the settlement agreement.

    Finally, the Plaintiff argues that there is conflicting language in the settlement agreement regarding the release provision; therefore, the Court should consider extrinsic evidence to determine the parties' intent. Specifically, Plaintiff argues that the language in in Recital G is a narrowly construed release statement that conflicts with the broader release found in the release provision of the agreement, thus making the release agreement ambiguous. Pl. Memo. Supp. 15.

This argument fails. "The intention of the parties controls the scope and effect of the release, and this intent is discerned from the release's express language as well as the circumstances surrounding the agreement." Carlile v. Snap-on Tools, 271 Ill.App.3d 833, 838 (1995) (internal citations and quotations omitted). Where the terms of the release are clear and explicit, the court must enforce the release as written. International Insurance Co.v. Sargent & Lundy, 242 Ill.App.3d 614, 623 (1993). "Where recitals in a contract contradict express provisions, the latter provisions control, and the court will resort to the recitals only if necessary to determine the intention of the parties and the operative provisions of the agreement." Owens Trophies, Inc. v. Bluestone Designs & Creations, No. 12 C 7670, 2017 WL 514178, at *4 (N.D. Ill. Feb. 7, 2017) (internal citation and quotations omitted). "Absent ambiguity, the question presented is one of law." JPMorgan Chase Bank, N.A. v. Asia Pulp & Paper Co., 707 F.3d 853, 863 (7th Cir. 2013) (internal citations and quotations omitted).

The language in the release provision clearly and unambiguously states that "the Parties unconditionally release and forever discharge each other as well as their past, present and future directors, shareholders, officers, employees, attorneys, consultants, agents, administrators, distributors, representatives, customers, and insurers. . .and all persons acting by, through, under or in concert with them." This operative provision is clear; ambiguity does not exist here. Plaintiff's argument also fails because Plaintiff's self-serving affidavit—without other factual support in the record— containing statements that he did not intend to release Defendant is wholly deficient. See Buie v. Quad/Graphics, Inc., 366 F.3d 496, 504 (7th Cir. 2004). The Court, therefore, will not consider the recital because it is not necessary to determine the parties' intention considering the unambiguous language, and the proffered extrinsic evidence is insufficient to create an issue of material fact. Thus, Plaintiff has failed present any contradictory evidence

preventing summary judgment, and further, there is no dispute that Defendant was working in 55 East Monroe's interest during the time in which Plaintiff alleges he was wronged. Consequently, summary judgment must be entered in Defendant's favor.

**B. Tortious Interference**

Even without the settlement agreement Defendant is still entitled to summary judgment. Under Illinois law, the elements for tortious interference are: (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contract; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages. Webb v. Frawley, 906 F.3d 569, 577 (7th Cir. 2018); Koehler v. Packer Group, Inc., 2016 IL App (1st) 142767, ¶ 42. "The tort recognizes that individuals have a property interest in their business relationships, such that those interests should be free from harm by others." Id.; Cohen v. Am. Sec. Ins. Co., 735 F. 3d 601, 613 (7th Cir. 2013) ("[A] claim for intentional interference with contract requires that the defendant intentionally and unjustly induced another to breach a contract with the plaintiff"); Wells Fargo Bank, N.A. v. Worldwide Shrimp Co., No. 17 C 4723, 2018 WL 6696607, at *14 (N.D. Ill. Dec. 20, 2018).

Defendant argues that Plaintiff cannot sustain a tortious interference claim against it because Defendant was acting as 55 East Monroe's agent at all relevant times, and therefore, the claim fails as a matter of law. Def. Mem. Supp. 2, 5. An entity exercising its business judgment for the benefit of its client is like an agent or corporate officer who exercises its discretion for the benefit of their company. HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc., 131 Ill.2d 145, 154-55 (1989). A party serving in such a capacity enjoys a conditional privilege against a claim that it interfered in a third party's contractual relationship. Id.; see also Webb, 906 F.3d at 577 ("Since a general duty not to interfere with an individual's business relationships is quite

broad, Illinois courts announced that in certain situations, an individual may be privileged to interfere with another's business relationships.").

As discussed in Section A, the Court has determined that Defendant's actions benefited 55 East Monroe when it solicited potential new tenants for the Premises. Defendant acted consistently with its client's business objectives and the law. See HPI Health Care Services, Inc., 131 Ill.2d at 154-55. Thus, Defendant is entitled to summary judgment in its favor.

### III. CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment [36] is granted and Plaintiff's cross-motion for summary judgment [47] is denied.

IT IS SO ORDERED.

                          ENTER:

                          */s/ Charles Norgle*
                          CHARLES RONALD NORGLE, Judge
                          United States District Court

DATE: July 19, 2019